UNITED STATES of America, Plaintiff,

v.

**Judith BERKAN, Defendant.**

**Crim. No. 79–152.**

United States District Court,
D. Puerto Rico.

April 2, 1980.

José A. Quiles, Hato Rey, P. R., for plaintiff.

Pedro Saadé, Puerto Rico Legal Services, Inc., Río Piedras, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

In the present criminal case, trial was held on August 23, 1979. The Defendant was convicted of violating 18 U.S.C. § 1382. An appeal was taken from this conviction and is presently before the United States Court of Appeals for the First Circuit. This matter is now before us on Defendant's Motion to Dismiss and a Motion to disqualify this Judge from further participation in this case. Because of the nature of the disqualification question, we must necessarily address it first.

The Motion seeking disqualification is specifically couched under the terms of 28 U.S.C. § 455(a) and (b)(2) (clause 2).[1] The

---

1. Although specifically brought under these subparts of Section 455 the tone of the Motion, the affidavit and the supporting material may perhaps be read to the effect that what is really being advanced is a claim of "personal bias or prejudice" on the part of this Judge. Such a claim, validly stated, would have left us no option but to proceed no further and submit the request for disqualification to a different Judge. See: 28 U.S.C. § 144. While the difference

six grounds advanced in support of this request, although closely interrelated, may be divided into two groups. The first group is composed of those grounds claiming prejudice from prior contact with the issues, the Defendant, and the witnesses. The second group purports to show certain antagonisms demonstrative of some set and predisposed manner of adjudicating the guilt of the Defendant.

 It is true, as Defendant argues, that the test of whether a judge's "impartiality might reasonably be questioned", § 455(a), is an objective, and not a subjective one. *United States v. Cowden*, 545 F.2d 257, 265 (C.A.1, 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). It is also true that the present law "*permits* disqualification of judges even if the alleged prejudice is a result of *judicially* acquired information", *United States v. Cepeda Penes*, 577 F.2d 754, 758 (C.A.1, 1978). (Emphasis in original). In any event the final test under both is:

> "... whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality not in the mind of the judge himself or even necessarily in the mind of a litigant filing the Motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man." *Cowden*, supra, p. 265.

Whatever the test or however it may be stated, the particular circumstances or facts must be such as to compel disqualification.

This is not the first time that Defendant has raised these issues before us. Without submerging into a point by point rebuttal of the grounds raised by the Defendant we are still of the opinion that reasonable men would not harbor a reasonable doubt on the circumstances of this case.

 First, all prior contact claimed has been judicial. While, as stated before, this does not immunize a particular judge from disqualification it does mean that more than "surmise or conjecture" is needed to require it. *United States v. Cepeda Penes*, supra, p. 758. To establish the specifics required, Defendant vehemently argues that factors outside of what was presented at trial were used in reaching findings of fact and law. Specifically, the Defendant argues that a neutral judge could not have known, and could not have used, her involvement in other related cases to support a finding of notice. The Defendant argues that it is only from this Judge's prior involvement in other related civil cases that a finding could be entered to the effect that the Defendant had constructive or actual notice of certain regulations. This is, however, to argue that a judge may never take judicial notice of the files of his own court even when, as was the case here, these are presented in evidence. This is also to argue that a defendant may not be presumed to know the law. It is axiomatic that the criminal law system operates on the principle that all citizens know the law. Mistake or ignorance are defenses in very few offenses of which this is not one. See *United States v. Mowat*, 582 F.2d 1194, 1200–1203 (C.A.8, 1978); cf. also: *United States v. Holmes*, 414 F.Supp. 831 (D.Md., 1976). Because published regulations are considered part of the public law, of which all citizens are presumed to be aware, the objective observer could not find prejudice in any situation where the court extends this general presumption to a defendant before it.

In this same vein this Court's finding that the Defendant had constructive notice of both published and unpublished regulations was an issue of fact as to which this Court

may appear to be purely semantical, there is substantial difference between a claim that a judge's "impartiality may reasonably be questioned" and one that he may be personally "biased and prejudiced." We are certain that learned counsel's failure to invoke 28 U.S.C. § 144 is not a mere oversight. Non reliance on 28 U.S.C. § 455(b)(1) (clause 1) or § 144 can hardly be coincidental. Moreover, the fact that

no certificate of good faith of counsel of record or affidavit of the Defendant are joined would indicate that the request does not in law rely on personal bias and prejudice as its basis. See 28 U.S.C. § 144. Absent any authority that would compel a motion under § 455(a) or (b)(1) (clause 2) to be submitted to a different judge we find no impediment to ruling on this request.

ruled against her. It is the type of ruling which is not uncommon in cases such as this. See e. g.: *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); *United States v. Mowat*, supra; *United States v. Floyd*, 477 F.2d 217, 222 (C.A.10, 1973); *United States v. Holmes*, supra. In any event adverse rulings do not indicate partiality. *Berger v. United States*, 255 U.S. 22, 34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921).

Lastly, Defendant invokes this Court's statement with respect to the public notoriety of the "Vieques issue" as another example of this Court reaching outside the record for proof against her. No reasonable man can deny the extreme publicity within the Puerto Rican community of this issue nor does Defendant question in any way said notoriety. Said fact, when coupled with the other evidence adduced at trial, would allow the conclusion reached by the Court as expressed in this statement. Cf. *United States v. Mowat*, supra, p. 1202–1203. All this could easily support a finding that the Defendant had both actual notice of regulations with respect to entry to this property, and more so, that she was aware that it was a "closed base" as defined by the case law. See *Greer v. Spock*, supra; *United States v. Mowat*, supra; *United States v. Floyd*, supra.

The second point raised to allege a "questionable impartiality", is this Court's previous exposure to the same witnesses in successive criminal trials. The fact that separate trials were held was because a Motion to Consolidate this case with other related cases was denied. The decision not to consolidate was done as a matter of law, i. e., this Court's interpretation of Rules 8 and 13, and the principles which govern them. As stated hereinbefore, adverse rulings do not indicate partiality. *Berger v. United States*, supra. As it later developed, because the trials were held separately, some of the witnesses were presented by the Government in support of their case against other Defendants in the various successive trials. The fact that their credibility was tested and accepted more than once does not mean it was automatically and without question accepted in each succeeding trial. Not all factual questions were the same for each individual Defendant. At each trial both the witnesses and other evidence presented, were set against the criminal standards of what is needed to convict and to acquit. Carrying Defendant's argument to its logical conclusion would mean that after a ruling had been made on the Motion to Consolidate, § 455 requires that twenty one different judges hear these cases. "[T]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case." *Cowden*, supra, p. 266. To find prejudice from hearing witnesses on successive trials is to do so out of conjecture and not on specific fact.

Finally, to accept the thrust of the Defendant's arguments is to say that because a judge presides in a civil injunction action with respect to military use of the Island of Vieques he is forever barred from presiding at any later judicial proceeding, either civil or criminal, that touches upon any aspect of the "Vieques issue." [2] Here it would specifically mean that he is forever barred from hearing any criminal trespass case with respect to military property on said Island, or for that matter anywhere in the Eastern Coast of Puerto Rico. This argument would mean that once a judge is "tainted" by having presided one of these cases he may never again hear any similar case. This position would now bar three of the four sitting judges of this district. This would further mean that the panel of the United States Court of Appeals for the First Circuit that is assigned to hear the Vieques civil suit which is now on appeal would be disqualified from hearing any as-

2. In this sense Defendant's reliance on *United States v. Columbia Broadcasting System*, 497 F.2d 107 (C.A.9, 1974) is inapplicable. The criminal case involves no injunction, much less any injunction that was unclear, unrecorded or unwritten. Section 1382, 18 U.S.C., is sufficiently clear as to what it forbids.

pect of the criminal cases because, in the words of the Defendant, "the similarities of the issues were just too close between the civil and criminal cases." Def.'s Memorandum of Law, p. 14. We do not believe there is any disqualification statute that requires or compels such a conclusion.

## II

■ Defendant's Motion for Dismissal of the charges essentially concerns the credibility, and other motives, of a witness used by the prosecution during trial, and any possible wrongdoing on the part of the Government. The Court has reviewed these arguments and believes that the issues raised therein may qualify as "newly discovered evidence" under Rule 33, Fed.R. Crim.P. Furthermore, the Court accepts that the witness whose testimony and motive are now being attacked was given credence and his testimony was used in findings of fact against the Defendant. This Court, however, would require a hearing before deciding upon what relief, if any, is appropriate under the circumstances.

Two problems impede action by this Court. The first is procedural. As this case is now on appeal we may not technically take any further action without an order from the Court of Appeals remanding this case. Rule 33, Fed.R.Crim.P. This is no real obstacle, however, and we accordingly certify that we are of the opinion that the issues raised by Defendant are not frivolous and require remand.[3]

The second problem, however, is more burdensome and not so easily handled. While we have stated that we may consider granting relief, we have at the same time stated that we find no merit to the disqualification request. We cannot escape the fact that the Defendant has stated that this is a key point on appeal. Even if remand were granted we envision that the disqualification problem will again be raised in the event the relief granted is by way of a new trial. Judicial economy would not be rightly served if we continued with proceedings

in this case knowing that the threshold issue of disqualification was unresolved by the Court of Appeals. For this reason, the Court respectfully suggests that in the event the Court of Appeals considers remanding this case for entertainment of the merits of the matters raised in the Motion to Dismiss, it first rule on Defendant's disqualification arguments.

For all the above stated reasons the Motion for Disqualification is DENIED. The Motion seeking to request a remand of this case from the United States Court of Appeals for the First Circuit is GRANTED. We reiterate our belief that any remand order should be accompanied by a resolution on appeal of the disqualification question.

IT IS SO ORDERED.

---

**3.** We make clear, however, that at this point we make no finding or ruling with respect to the merits of the Motion to Dismiss or the relief requested therein by the Defendant.