In re Louis Peter **OLCESE**, Integrated Energy Programs, Inc., Integrated Services, Inc., Integrated Petroleum Company, Inc., Debtors.

Bankruptcy No. 584–767.

United States Bankruptcy Court, N.D. Ohio.

June 8, 1988.

Ronald Manus, Cuyahoga Falls, Ohio, Trustee.

Richard Wilson, Kent, Ohio, for the trustee.

John Schwemler, Akron, Ohio, for debtor.

John K. Keller, Columbus, Ohio, for Integrated Petroleum.

### FINDING AS TO MOTION TO DISQUALIFY PURSUANT TO RULE 5004

HAROLD F. WHITE, Bankruptcy Judge.

This matter comes before the court upon the Motion to Disqualify Pursuant to Rule 5004 and the Affidavit to Support Disqualification Pursuant to Rule 5004 filed by the debtor, L. Peter Olcese (hereinafter referred to as "Olcese"), on behalf of the debtors. The matter was set for hearing with notice given to all interested parties. On May 10, 1988, the trustee, Ronald Manus (hereinafter referred to as "Trustee"), by and through counsel filed his Response to Debtor's Motion to Disqualify. The following were present at the hearing held May 13, 1988: Olcese, represented by attorney John A. Schwemler, and the Trustee, represented by attorney Richard A. Wilson. Although Olcese had counsel, he filed and argued the Motion on behalf of the debtors.

The relevant facts and procedural history of this consolidated case are as follows. The debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code on June 28, 1984 with representation by Attorney James A. Beck and attorney John A. Schwemler and the law firm of Brouse & McDowell. On September 5, 1984 the cases were consolidated for joint administration.

Prior to seeking relief in bankruptcy, the debtors were named as defendants in several state court lawsuits one of which was filed June 25, 1984 by attorneys John K. Keller and John M. Adams, of Vorys, Sater, Seymour & Pease, on behalf of the plaintiff, Integrated Petroleum Investor Committee (hereinafter referred to as "Committee"). The lawsuit requested a dissolution of limited partnerships, an accounting of monies received and disbursed as a result of the wells and oil and gas leasehold estates, and appointment of a receiver to take control of the wells and the oil and gas leasehold estates. The membership of the Committee, the plaintiff, was set forth in an attached exhibit.

Attorney Keller, on behalf of the Committee, filed a proof of claim in this consolidated case on November 8, 1984 which claim includes Exhibit A, a listing of the names and addresses of each member of the Committee, and Exhibit B, a narrative explanation of both the partnerships and their purpose and also the basis for the Committee's claim.

Also prior to the June 28, 1984 filing for bankruptcy relief, specifically on January

31, 1983, the Chief of the Division of Oil and Gas of the Ohio Department of Natural Resources ordered the debtors to either plug and abandon or put into production certain well sites. A Settlement Agreement was entered into June 3, 1983; however, the debtors failed to comply therewith. Subsequently, a lawsuit was brought by the landowners in Trumbull County Court of Common Pleas, Case No. 83–CV 65. On April 17, 1984 said state court entered judgment which would, and subsequently did, result in forfeiture of certain wells upon non-compliance with the Oil and Gas Lease and the judgment entry by the debtors.

Furthermore, per Olcese's own testimony, the State of Ohio refuses to issue the debtors any permits to drill more well sites until there is compliance with all environmental laws. The State of Ohio (hereinafter referred to as "State"), prior to the bankruptcy filing, also brought suit against the debtors in Trumbull County Court of Common Pleas, Case No. 83–CV 1043, for their non-compliance with the state's environmental laws. The debtors, pursuant to Adversary Complaint 587–0266, sought to enjoin the State from proceeding thereon which injunction was denied by this court on September 26, 1986. The Order Denying Injunction specifies that:

> The court further finds from the admissions of the debtor that only at well No. 1 has the debtor attempted to comply with said statutes and at all other wells, being wells Nos. 2, 4, 7, 9, 14, 15, 3, 12, 13, and 11, the debtor has taken no action to comply with the agreement entered into with the State of Ohio and as required by state law. The court further finds that the debtor does not have funds available to meet the requirements as specified by the order of the Common Pleas Court of Trumbull County.

> The court further finds that since the entry of the order of the Common Pleas Court of Trumbull County the debtor has been divested of interest in wells Nos. 2, 9, 11, 13, 14, 15 and presently the debtor is operating only wells Nos. 3, 4, 7, and 12, which wells are, as of this date, under suspension of operation due to the shutdown of LTV Steel and the debtor's failure to comply with the brine disposal requirements of the State of Ohio.

The bankruptcy court determined that since the debtors no longer had control of the afore-stated wells, the State should be permitted to proceed with its action to correct the alleged violations and thereby denied the debtors' request for an injunction. Therefore, as a result of the debtors' non-compliance with the Settlement Agreement to which they agreed in 1983, the State, in 1986, was permitted to proceed to remedy the environmental situation.

The State, however, in its state court action, obtained a judgment for civil penalties, $200,000 against Integrated Petroleum Company, Inc. and $50,000 against Olcese, rather than a judgment for actual damages to the environment resulting from the debtors' conduct. The State sought to have the civil penalties paid as an administrative expense which was denied by Order of this court on May 27, 1988.

On November 5, 1984 the court granted the debtors an extension of the exclusive time for them to file a plan of reorganization. The debtors failed so to do, and on November 12, 1985 the court ordered the debtors to file a Disclosure Statement and a Plan of Reorganization. Again, the debtors failed so to do and on June 24, 1986, the debtors were granted another sixty days in which to file, and on September 22, 1986 another extension was granted until October 15, 1986. To date, no Plan of Reorganization nor Disclosure Statement has been filed by or on behalf of the debtors.

A bank creditor requested appointment of a trustee on October 23, 1984 which matter was settled and the debtors remained as debtors in possession. Also, on April 7, 1986, another creditor moved for appointment of a trustee which motion was ultimately withdrawn. On August 5, 1986 the bank creditor again moved for appointment of a trustee to handle this estate with said motion granted on November 18, 1986 and the Trustee was appointed as to the debtors Olcese, Integrated Service, Inc., and Integrated Petroleum Company, Inc.

On February 5, 1987 the Trustee was appointed as to the debtor, Integrated Energy Programs, Inc., as well. The appointment of a trustee occurred upon conclusion of a hearing, or trial, with the debtors and the creditor both filing post-trial briefs. At the hearing, the creditor also submitted, as Exhibit A, an "Examiner's Report" conducted by Ernst & Whinney.

The docket is lengthy and an examination of same reveals numerous hearings have been held as well as pleadings filed. On April 4, 1988 the court, upon the issuance and hearing on a Show Cause Order, converted the case of the debtor, Olcese, to a chapter 7 and adjourned the hearing as to the other three estates to a later date. The debtor appealed the Order of Conversion and subsequently filed the Motion and Affidavit now before the court. On May 13, 1988 the court heard and granted attorney Beck's Motion to Withdraw As Attorney of Record and denied, for the time being, attorney Schwemler and the firm of Brouse & McDowell's Motion to Withdraw.

### ISSUE

Pursuant to 28 U.S.C. §§ 455(a) and (b) and 144, must the court recuse itself on the basis that it is disqualified?

### DISCUSSION OF LAW

■ The debtors moved, pursuant to Bankruptcy Rule 5004 and 28 U.S.C. § 455(a) and (b) for an order recusing this court on the basis that the judge is disqualified per allegations made by the debtors. Bankruptcy Rule 5004(a) provides that: "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Thus, disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455 which provides, in pertinent part, as follows:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> .    .    .    .    .

Therefore, pursuant to section 455(a), a judge has an independent duty to recuse himself as the statute is a self-executing provision for the disqualification of federal judges. *United States v. Amerine*, 411 F.2d 1130, 1134 (6th Cir.1969) (interpreting predecessor to § 455(a)).

■ Two days before the hearing the debtors submitted an Affidavit to Support Disqualification Pursuant to Rule 5004 which speaks to disqualification for bias or prejudice pursuant to 28 U.S.C. §§ 144 and 455(b)(1).

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. At the May 13, 1988 hearing, the debtors submitted a just-filed Statement to Support Disqualification Pursuant to Rule 5004.

That portion of the debtors' motion which seeks disqualification under 28 U.S.C. § 455(a) will be addressed first. Section 455(a) requires the judge to disqualify himself when "his impartiality might reasonably be questioned." The standard is an

objective one in that it "asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge" rather than what the judge estimates to be his own ability to impartially hear a case. *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir.1980). An analysis of the legislative history provides the following guideline:

> In assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not [to] have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R. 1453, 93rd Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News, 6351, 6355 (emphasis in original). Courts have an obligation to hear a matter "unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some kind of probative evidence." *Blizard v. Frechette*, 601 F.2d 1217 (1st Cir.1979).

The debtors herein challenge this court's impartiality on the basis that attorney John K. Keller is a member of the firm of Vorys, Sater, Seymour & Pease which firm includes a former bankruptcy judge, Robert J. Sidman. The record in this bankruptcy indicates that once in 1984 attorney Sidman appeared, and thereafter all pleadings and appearances were by attorney Keller or another member of the firm. The debtors, at one time, were represented by the firm of Baker & Hostetler which firm also includes a former bankruptcy judge. If the fact that a former bankruptcy judge is associated with a law firm appearing before a bankruptcy court in any given case is grounds for disqualification due to impartiality, there would be chaos in the system for, in at least one city in the Sixth Circuit, three former bankruptcy judges practice bankruptcy law. Therefore, the bankruptcy courts and bar would find it difficult to deliver justice to the people seeking bankruptcy relief.

As authority for its argument seeking disqualification of this court, the debtors cite *Roberts v. Bailar*, 625 F.2d at 129, and, in fact, recited the following at the hearing: "If there is a reasonable, factual basis for doubting the judge's impartiality, ... [he] should disqualify himself...." The facts in *Roberts* are wholly unrelated to the facts in the case *sub judice*. The plaintiff, Roberts, brought a sex discrimination suit against her employer, the Postal Service and the Postmaster General. At the pre-trial, the District Judge stated he knew the Postmaster General and that he was an "honorable man" and "would never intentionally discriminate against anyone." *Roberts v. Bailar*, 625 F.2d at 127. The Sixth Circuit, therefore, found that "[u]nder the circumstances of this case, it is clear that a reasonable person would question the impartiality of the District Judge." *Roberts v. Bailar*, 625 F.2d at 129. "The alleged bias must derive from an extra-judicial source.... The nature of the judge's bias must be personal and not judicial." *In re Beard*, 811 F.2d 818, 827 (4th Cir.1987).

In this case, there is no factual basis for doubting the court's impartiality. None of the parties were known to the court prior to the bankruptcy proceeding. The court did have knowledge and was acquainted with the counsel representing the debtors as said counsel have represented numerous parties before the bankruptcy court. Prior to this case, however, this court was not acquainted with attorney Keller of Vorys, Sater, Seymour & Pease.

In the case *In re Johnson-Allen*, 68 B.R. 812, 817–18 (Bankr.E.D.Pa.1987), the court sets forth cases in which "pre-bench contact of judges with the actual litigants, their counsel, and issues which have come before them on the bench have been rejected as bases for recusal." (citations omitted). The court in *Johnson-Allen* denied

recusal finding that the fact that the judge, prior to taking the bench, had litigated against another party in a case similar to the case before the court, would not be compelling enough for a "reasonable person, knowing all of the relevant facts" to conclude that the judge harbored a "personal bias or prejudice with respect to the case *sub judice.*" *In re Johnson–Allen,* 68 B.R. at 813.

In addressing the Affidavit in Support of Motion to Disqualify filed by the debtors pursuant to 28 U.S.C. §§ 144 and 455(b)(1), the court is mindful that the statutory language of section 144 is mandatory. However, "[t]he mere filing of an affidavit under this section does not automatically disqualify a judge. *Behr v. Mine Safety Appliances Co.,* 233 F.2d 371 (3rd Cir.), *cert. denied,* 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 237 (1956). Disqualification results only from the filing of a timely and sufficient affidavit." *United States v. Townsend,* 478 F.2d 1072, 1073 (3d Cir. 1973).

The Affidavit was filed two days before the hearing on the Motion to Disqualify which Motion was filed nearly four years after the filing of the bankruptcy petition. The debtors have appeared before this court on *numerous* occasions via counsel and personal appearances by Olcese. With such ample opportunity to raise the issue of impartiality, the debtors cannot claim the Affidavit is timely filed. The debtors were aware that attorney Keller represented creditors of the estate as said creditors were plaintiffs in a state court action filed shortly before the bankruptcy was filed. In the case *In re Johnson–Allen,* 68 B.R. at 814, the court found that the affidavit was timely as it was filed before any consideration by the court of the merits. Here, however, the debtors never objected to the proof of claim filed by attorney Keller in November, 1984. Neither did the debtors ever request disclosure of the creditors, i.e. the Committee members, which was readily available from the proof of claim and/or the complaint filed by the Committee in the 1984 state court action. Only upon the court's April 4, 1988 Order

of Conversion on Olcese's case did the debtors argue impartiality. As the court finds the Affidavit to be untimely, it is unnecessary to determine its sufficiency.

Inasmuch as the court may not pass on the truth of the facts alleged in the Affidavit, and, in fact, must deem them to be true, *Berger v. United States,* 255 U.S. 22, 35–36, 41 S.Ct. 230, 233–34, 65 L.Ed. 481 (1921), the court need only determine if the facts are such that they would convince a reasonable person that the judge harbored a personal, as opposed to a judicial, bias against the debtors. For 28 U.S.C. §§ 144 and 455 must be construed *in pari materia.* And both sections speak to personal bias. *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir.1983). Sections 455(b)(1) and 144 specifically include the term "personal" and the *Johnson–Allen* court determined that the "term must be read into [section] 455(a) as well." *In re Johnson–Allen,* 68 B.R. at 817.

Section 455(b)(1) provides for disqualification when the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." Considering all the pleadings and the testimony, the debtors have not alleged any personal knowledge by the court of disputed evidentiary facts concerning this bankruptcy. The alleged impartiality or bias, as set forth in the Motion, Affidavit and Statement, relates instead to judicial proceedings reflected in transcripts and orders.

Upon the court's Order of Conversion, the debtors filed the Motion for Disqualification and Affidavit as the debtors, in the words of Olcese, "disagree with the court". Although the statute for recusal "replaces the former 'duty to sit' standard and requires the use of reasonableness in a judge's disqualification decision," *In re Krisle,* 54 B.R. 330, 346 (Bankr.D.S.D. 1985), "the law is clear in stating that a motion for recusal can never be based upon a judge's adverse ruling made during the course of a proceeding." *In re Chandler's Cove Inn, Ltd.,* 74 B.R. 772, 776 (Bankr.E. D.N.Y.1987), *citing Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Recusal is not required be-

**922**

cause a party dissatisfied with the court's ruling claims bias. 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3549 (1984).

By Olcese's own testimony and a complete review of the Affidavit and Motion to Disqualify, the debtors are dissatisfied with this court's rulings, particularly as to the Order of Conversion for the debtor, Olcese. Further, the debtors are dissatisfied with this court's management of its docket. Bankruptcy Rule 8001 provides for taking an appeal from a judgment, order, or decree of a bankruptcy judge. An appeal is the appropriate method for dealing with a litigant's dissatisfaction with a court's ruling. The debtors incorrectly testified that "the Code [sic] does provide Section [sic] 5004 when a disagreement does occur." Bankruptcy Rule 5004 provides that a bankruptcy judge is governed by 28 U.S.C. § 455 and thus speaks to disqualification and not to disagreement. Furthermore, Olcese testified that "there is factual basis that I believe to be impartiality or prejudice." However, the facts offered in the Affidavit, Exhibits, Motion and Statement pertain to judicial decisions or proceedings and not to extrajudicial sources. *See In re Beard,* 811 F.2d at 827. To reiterate, 28 U.S.C. §§ 144 and 455 are not intended "to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise." *Berger v. United States,* 255 U.S. at 31, 41 S.Ct. at 232.

This court does not consider recusal lightly. However, the "right to an impartial judge cannot be advanced so broadly as to permit 'judge-shopping.'" *In re Krisle,* 54 B.R. at 346, *citing In re Martin–Trigona,* 573 F.Supp. 1237, 1243 (D.Conn.1983). After nearly four years of adjudication of this complicated and myriad bankruptcy, this court could relieve itself of any further duties as to this estate. However, judges have a "duty not to avoid cases just because they are difficult or controversial." *United States v. Singer,* 575 F.Supp. 63, 68 (D.Minn.1983).

On the basis of the foregoing, this court is not persuaded that recusal is required

pursuant to 28 U.S.C. §§ 144 and 455. Therefore, the debtors' Motion to Disqualify is denied. A separate order in accordance with this Finding shall be entered.