**In re PRINCETON MEDICAL MANAGEMENT INC.; Princeton Dental Management Corporation; Princeton Med. Manage. Midwest, Inc.; Mason Dental Midwest, Inc.; and Princeton Med. Mgt. Southeast, Inc., Debtors.**

**Bankruptcy Nos. 99–16011–8C1 to 99–16015–8C1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 8, 2000.

Order denying rehearing, May 22, 2000.

Joel S. Treuhaft, Joel S. Treuhaft, P.A., Palm Harbor, FL, for debtors.

Soneet R. Kapila, Ft. Lauderdale, FL, Chapter 11 Trustee.

Roberta Colton, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Chapter 11 Trustee.

John J. Lamoureux, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Attorneys at Law, Tampa, FL, for Official Committee of Unsecured Creditors.

Buddy D. Ford, Buddy Ford, P.A., Tampa, FL, for Amsterdam Equities, Inc.

Dennis J. LeVine, Dennis LeVine & Associates, Tampa, FL, for The Island Group.

Theresa M. Boatner, Office of U.S. Trustee, Tampa, FL.

## ORDER DENYING DEBTORS' MOTION FOR DISQUAL- IFICATION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

These cases came on for consideration of the debtors' motion to disqualify the undersigned judge filed on May 1, 2000 (Document No. 162).

### I.

The record reflects that the official committee of unsecured creditors and an individual creditor, The Island Group, filed a joint motion to appoint a Chapter 11 trustee (Document No. 134). The court heard the motion on April 20, 2000. The United States trustee supported the appointment of a Chapter 11 trustee and had filed its own motion to dismiss or convert the case on substantially the same grounds urged by the creditors (Document No. 126). Other unsecured creditors at the hearing also supported this relief. The only creditor that opposed the relief was a secured creditor, Amsterdam Equities, Inc. This creditor is closely associated with the management of the debtors and has one or more of its representatives serving on one or more of the debtors' boards of directors.

Everyone at the hearing on the motion to appoint a Chapter 11 trustee, including the court, understood the seriousness and import of the relief requested in the motion. Debtor-in-possession governance is the norm in Chapter 11 cases. *In re Savino Oil & Heating Co.*, 99 B.R. 518, 525 (Bankr.E.D.N.Y.1989). It is only when cause or the best interests of the estate and creditors is shown under Section 1104(a) of the Bankruptcy Code that the "stewardship of the reorganization effort must be turned over to an independent trustee." *Id.* Thus, if the court granted the motion, a Chapter 11 trustee would replace the debtor-in-possession, and debtor's management would lose the

ability to control or manage the debtor's business and affairs.

After a lengthy hearing, the court entered an order directing the appointment of a Chapter 11 trustee in these consolidated cases on April 21, 2000 (Document No. 152). Subsequently, the United States trustee appointed a Chapter 11 trustee, Soneet R. Kapila, and the court has approved the appointment (Documents Nos. 159, 156, and 158).[1]

At the conclusion of the April 20 hearing at which the court considered the motion to appoint a Chapter 11 trustee, the court dictated on the record a detailed decision explicating the reasons requiring a Chapter 11 trustee. The court explained in detailed terms why the moving creditors had met their burden under Section 1104(a)(1) and (2) of the Bankruptcy Code for obtaining this relief. The court found that the creditors had demonstrated that the appointment was required "for cause," and cited examples of the debtors' mismanagement of the debtors' business and affairs. The court concluded that the debtors' management could not successfully confirm a plan of reorganization and that the best interests of creditors and the estate required the appointment. Not only did the court have the benefit of the record made at the hearing in making this decision, the court also had the benefit of presiding over these substantively consolidated cases since they were filed on October 1, 1999—a record the court observed over more than six months time. The court, therefore, was intimately familiar with the facts and circumstances involved.

In the pending motion, the debtors seek the undersigned's disqualification as judge. The debtors allege that the court's decision to order the appointment of a trustee demonstrates the undersigned's bias or prejudice against the debtors. Although the debtors provide no particulars, they allege generally that, in making my ruling, I treated them differently—and more harshly—than other debtors.

### II.

28 U.S.C. § 455(a) is the applicable statute governing consideration of the debtors' motion. Section 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." [2]

The test traditionally employed to determine whether recusal is mandated under Section 455(a) was "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988) (citation and footnote omitted), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989).

1. The debtors have not served the Chapter 11 trustee with the motion for disqualification at his correct address of record. Notwithstanding this defect, the court will deal with the merits of the motion here.

2. Section 455(b)(1) provides that the judge. shall also disqualify himself "[w]here he has a personal bias or prejudice concerning a party . . . ." Section 455(b)(1), however, appears to be either inapplicable or subsumed by Section 455(a) in these circumstances. To the extent that there is a substantial area of overlap between the two subsections so that Section 455(b)(1) employs the same standard as Section 455(a), *Liteky v. United States*, 510 U.S. 540, 553 n. 2, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the reasoning recited in the text demonstrates its inapplicability. In any event, "[w]hat is at issue in the present case *is* an aspect of 'partiality' already addressed in (b), personal bias or prejudice. The 'objective appearance' principle of subsection (a) makes irrelevant the subjective limitation of (b)(1): The judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so." *Id.* (emphasis in original). In the circumstances of the pending motion, therefore, Section 455(b)(1) has no independent application. Even if it were applicable, I cannot and do not find that I am subjectively biased or prejudiced in fact. Indeed, I am *not* biased or prejudiced in fact against the debtors or their counsel.

■ As the authorities make clear, the statute focuses on a judge's bias toward a party rather than toward that party's counsel. *Diversified Numismatics, Inc. v. City of Orlando,* 949 F.2d 382, 385 (11th Cir.1991). When the complainant is an attorney in the case who represents a party, which is not the case here, the bias demonstrated to justify disqualification must be of a "continuing and 'personal' nature over and above mere bias against a lawyer because of his conduct." *Id.,* quoting *Davis v. Board of School Commissioners,* 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). In other words, the bias against the attorney must be so severe that it might reasonably affect the outcome of the client's case.

■ In addition, the authorities developed what came to be known as the "extrajudicial source" doctrine. Under this doctrine, "for a bias to be personal, and therefore disqualifying, it 'must stem from an extra-judicial source.'" *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 964 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980), *quoting United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

In deciding whether recusal under Section 455(a) is subject to this "extrajudicial source" doctrine, the Supreme Court in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), refined the parameters of disqualification for alleged judicial bias under Section 455. In *Liteky,* the Supreme Court held that "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." 510 U.S. at 555, 114 S.Ct. 1147. The Court wrote:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.,* at 28, 41 S.Ct. 230 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56, 114 S.Ct. 1147. (Emphasis in original).

■ As noted in the concurring opinion in *Liteky,* "all would agree that a high threshold is required to satisfy" the standard for bias and partiality disqualification motions. *Id.* at 558, 114 S.Ct. 1147 (Kennedy, J., concurring). "Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Id.* The reason is simple: a judge has the duty to judge absent legitimate grounds for dis-

qualification. As another court of appeals wrote, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Securities & Exchange Commission v. Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).

### III.

 Applying these legal standards to the facts at hand, I conclude that the motion for disqualification must be denied. The thrust of the motion is that my judicial ruling demonstrates the alleged bias. Adverse rulings, however, constitute no basis for disqualification. *Liteky* at 550–51, 555–56, 114 S.Ct. 1147. Judicial rulings instead are proper grounds for appeal. *Id.* at 555, 114 S.Ct. 1147.

Further, the generalities and conclusory statements included in support of the debtors' motion are both untrue and insufficient to show deep-seated and unequivocal antagonism that would render fair judgment impossible under the *Liteky* standard. To the extent the debtors generally allege that "[t]he Court has consistently treated the debtor[s] unequally and more harshly than other parties for acts involving even innocent noncompliance with Court Orders," this complaint is not true, as any review of the entire record from the inception of these cases will reveal. It is true that the debtors and their counsel have demonstrated a consistent pattern of noncompliance with court orders, Bankruptcy Code, Bankruptcy Rules, and Local Rules requirements, and the United States Trustee's Guidelines. The record reflects, however, that the court has dealt with these problems in a patient and consistent, although firm, manner.

The debtors generally allege that "[t]he Court has harshly criticized the debtor[s] during the few hearings in which a representative of management did not appear, yet has never even mentioned the fact that except for one aborted hearing, no other party has appeared in Court, except

through counsel." This allegation is factually inaccurate and misconstrues the court's position. The court has explained on countless prior occasions—to Bar groups, in CLE programs, and in individual Chapter 11 cases—the critical importance in a Chapter 11 case of management's active involvement in the case and attendance at all court hearings of importance. The reasons for this are many and are all related to management's role as management of *the debtor-in-possession.* These reasons have nothing whatsoever to do with non-debtor entities, and the attendance at hearings of non-debtor management representatives is therefore of no consequence. In this case, the debtors' president, Frank LaPort, failed to attend important court hearings at which I expected his attendance. The court commented on his absence in an effort to ensure his attendance at future hearings. It is untrue that I "harshly criticized the debtor[s]" concerning this, and it is irrelevant that I did not mention the absence of management representatives in the case of other parties.

It is also untrue that "[t]he Court has accepted proffer of opposing counsel as fact in contested matters, despite opposing counsel having no witnesses present or admissible documentary evidence." The court has explicated on the record every decision the court has made in this case. The record does not support any contention that I have treated the debtors one way and creditors another. It is true that the court did not take testimony at the April 20 hearing. The court's decision, dictated on the record then, explains why none was required and the basis for the decision I made. Every record and every decision the court has made in this case can be examined on appeal or otherwise.

Likewise, it is untrue that "[t]he Court has allowed opposing counsel rebuttal argument, but has refused to allow Debtor[s] similar rebuttal argument in contested matters." The record in these cases will reveal that I have given all counsel full and

fair opportunity to present their cases. At the April 20 hearing, the movant creditors had the burden of production and persuasion. They opened, the debtor and the creditor supporting the debtors' position responded, and the moving creditors replied. Any claim of procedural unfairness is unfounded.

Lastly, it is untrue that "[t]his Court had previously ruled that the issues previously raised did not rise to the level of removal of management." The court considered the removal of management for the first time at the hearing on the joint motion to appoint a Chapter 11 trustee. The debtors' assertion that the court made "inconsistent rulings" is thus based on a false premise. It is true, however, that many of the facts concerning management of the debtors' failures and omissions were made a matter of record at prior hearings.

█ It is obvious, of course, that, by stating untruths, the debtors may not create a basis for disqualification that does not otherwise exist. *See, United States v. Greenough,* 782 F.2d 1556, 1558, *reh'g denied,* 788 F.2d 1570 (11th Cir.1986). Nevertheless, even if these unsubstantiated generalities were somehow true, they would be insufficient to constitute the deep-seated and unequivocal antagonism that would render fair judgment impossible under the *Liteky* standard. As the Court wrote in *Liteky:*

> In their briefs here, petitioners have referred to additional manifestations of alleged bias in the District Judge's conduct of the trial below, including the questions he put to certain witnesses, his alleged "anti-defendant tone," his cutting off of testimony said to be relevant to defendants' state of mind, and his post-trial refusal to allow petitioners to appeal in forma pauperis. [FN3]
> 
>> FN3. Petitioners' brief also complains of the District Judge's refusal in the 1983 trial to call petitioner Bourgeois "Father," asserting that this "subtly manifested animosity toward Father Bourgeois." Brief for Petitioners 30.

> As we have discussed, when intrajudicial behavior is at issue, manifestations of animosity must be much more than subtle to establish bias.
> 
> All of these grounds are inadequate under the principles we have described above:

510 U.S. at 556, 114 S.Ct. 1147.

Thus, it is clear that the unsubstantiated generalities alleged by the debtors fall short of the facts required for disqualification. Indeed, these generalities pale by comparison to the totality of the facts involved in *Liteky* upon which the Court concluded that disqualification was not justified. In the words of the Supreme Court in *Liteky,* the allegations of the debtors as set forth in the motion:

> [A]re inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel .... All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

*Id.* (emphasis in original). Paraphrasing the words of our court of appeals, "an objective, disinterested, lay observer fully informed of the facts ... would [therefore] entertain [no] significant doubt about [my] impartiality" as judge in this case. *Parker v. Connors Steel,* 855 F.2d at 1524.

For these reasons, the court denies the motion for disqualification.

*ORDER DENYING DEBTORS' MOTION FOR REHEARING OF THE ORDER DENYING DEBTORS' MOTION FOR DISQUALIFICATION*

These cases came on for consideration of the debtors' motion for rehearing filed on May 18, 2000 (Document No. 194). The motion appears to be filed pursuant to F.R.B.P. 9023 and F.R.Civ.P. 59 with re-

spect to the court's order denying the debtors' motion for disqualification entered on May 8, 2000 (Document No. 171). Because the court is thoroughly familiar with the issues, the court can decide this motion without further hearing.[1] No benefit will be obtained by conducting a hearing.

The motion seeks a rehearing of the order by another judge and also alleges two grounds in support of the motion for disqualification not contained in the original motion.

▇▇▇ The request for a hearing before another judge is meritless. Under the plain language of 28 U.S.C. § 455(a), it is the responsibility of the undersigned judge to determine if disqualifying grounds exist under the statute. *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See also Carter v. West Publishing Co.,* 1999 WL 994997 (11th Cir.1999) (Tjoflat, J.). Although 28 U.S.C. § 144 contains a different procedure, Section 144 does not apply to bankruptcy judges, whereas Section 455 does. F.R.B.P. 5004; *Liteky* at 548, 114 S.Ct. 1147. In any event, the debtors have not attempted to invoke Section 144; they have filed neither an affidavit nor a certificate in support of their motion.

▇▇▇ The first new ground in support of the claim of bias that the debtors allege in the motion for rehearing is that I held the debtors to a different evidentiary standard at the March 31, 2000, hearing on the debtors' motion for substantive consolidation than I held the creditors at the April 20 hearing on their motion to order the appointment of a trustee. Quoting verbatim paragraph 8.b. of the debtors' motion:

> The Court has held the Debtor to a higher evidentiary standard when it sought to substantively consolidate the above caption cases. Despite having noticed a hearing on the Debtors' Motion for Substantive Consolidation, the court

scheduled a second hearing, and required notice to creditors again, despite previous notice and lack of participation based on the U.S. Trustee's objection to the substantive consolidation on the grounds that there were not identical creditors in all cases, which is not even valid grounds the opposition of substantive consolidation of cases. The bias is not that the Court continued the hearing, but rather the disparity in treatment to the debtor in this hearing and the treatment of the Joint Motion for the Appointment of a Trustee.

As the record made in these cases reflects, the debtors sought to substantive consolidate these cases, and several parties expressed opposition. I therefore scheduled the debtors' motion for substantive consolidation for evidentiary hearing. At the evidentiary hearing, all parties agreed that the court should order substantive consolidation, and the court did so (Document No. 139). In the pretrial process before the evidentiary hearing, the court informed all parties that I required evidence on the debtors' motion because nothing in the record otherwise established the substantive consolidation criteria required by *Eastgroup Properties v. Southern Motel Association, Ltd.,* 935 F.2d 245 (11th Cir.1991).

On the other hand, as I explained in my decision following the April 20 hearing on the creditors' motion to order the appointment of a trustee, I was not required to take evidence on that matter because the undisputed and undisputable facts in the record then supported a trustee under the criteria of Section 1104(a)(1) and (2) of the Bankruptcy Code. The court made this point again in its May 8, 2000, order denying the debtors' motion for reconsideration of the order on joint motion to appoint Chapter 11 trustee (Document No. 170), where the court wrote:

> this defect, the court will deal with the merits of the motion here.

---

1. The debtors have not served the Chapter 11 trustee with the motion for rehearing at his correct address of record. Notwithstanding

As explained in the court's decision dictated on the record at the April 20, 2000, hearing, the hearing that led to the entry of the order on joint motion to appoint a Chapter 11 trustee, the court based its decision on the undisputed and undisputable facts appearing of record and made since these cases were filed on October 1, 1999. The court did not base its decision on any party's assertion of facts disputed by the other party. As explained in the court's decision, the court did not need to take testimony to resolve disputes of fact that did exist. The undisputed facts contained in the record amply support the court's decision.

The debtors, as is their right, have now noticed their appeal from that decision (Document No. 195). Thus, nothing about the taking of evidence at one hearing and not taking evidence at the other hearing demonstrates bias in these circumstances.

■ The debtors make two other passing complaints about the hearing on their motion for substantive consolidation in paragraph 8.b. of their motion for rehearing. First, they complain that I gave credence to the objections to consolidation of the United States trustee. It was The Island Group and the Official Committee of Unsecured Creditors, and not the United States trustee, who had filed objections (Documents Nos. 44 and 59), although the United States trustee did support the creditors' objections at hearings. Contrary to the debtors' assertion, these objections—concerning the lack of substantial identity of creditors, disproportionate harm to benefit, the debtors' separate and independent identities and operations, and creditors' reliance on the separate credit of the debtor entities, among others—were plainly based on the relevant legal criteria as set forth in *Eastgroup Properties*. The court cannot be said to have demonstrated bias against the debtors when the court treated these objections as the legally sufficient objections they plainly were.

Second, the debtors complain that the court demonstrated bias when it rescheduled the hearing on the debtors' motion for substantive consolidation. February 22, 2000, was the date set for that hearing. As the record of February 22 shows, the court was required to reschedule that hearing when it became apparent that counsel for the debtors had failed to mail notice of the hearing to creditors until five days before the hearing despite the fact that the court had ordered on January 27, 2000, and February 2, 2000, that counsel mail that notice "immediately" (Documents Nos. 33 and 39). Importantly, the notice counsel failed to give also was to include the discovery and pretrial procedures established for the hearing. Perhaps creditors would have asserted that the court was biased in favor of the debtors had the court proceeded to conduct that hearing on February 22—affecting the rights of all creditors—when the debtors had failed to give meaningful notice of the hearing to creditors. Nevertheless, it cannot be reasonably said that rescheduling the hearing in the circumstances existing on February 22 demonstrates my bias against the debtors.

■ The second new ground for bias that the debtors offer in their motion for rehearing is that I am "rigid" in interpreting the Bankruptcy Code and Rules in all cases that are before me. The debtors allege, quoting verbatim paragraph 10 of the debtors' motion:

The Court has rigid interpretations of the bankruptcy code and rules which the undersigned believes are genuine attempts to enforce the court's interpretation of due process and the bankruptcy code, however, such rigid interpretations to not appear to be following the spirit or intent of Congress when he enacted the Bankruptcy Code. Such rigid interpretations as this court has historically imposed have led to the entries of orders and the management of cases which clearly is not contemplated within the code. An example of such rigidity is the

Court's refusal to enforce section 1326 of the bankruptcy code until the court was reversed in the case of Robert Earl Smith, Case # 92–7298. Prior to the Smith case, this court refused to grant motion to turnover monies paid to do Chapter 13 trustee prior to confirmation of the chapter 13 Plan to a debtor who converted its case to Chapter 7, indirect violations of the plane reading of the bankruptcy code. Evidence of similar conduct can be found by reviewing the court's order establishing duties are Chapter 11 debtor, in the court's requirements has stated in open court in this case as well as other cases in which counsel has appeared.

These allegations appear to be a general complaint about the way I serve as a judge and the decisions I make. If a judicial decision I make is wrong, of course, the debtors can correct the error on appeal, as they are now attempting to do with the court's decision to order the appointment of a Chapter 11 trustee. It is plain, however, that these allegations state no claim of my bias against the debtors.

Otherwise, the motion for rehearing simply restates the generalities and reargues the matters that were thoroughly considered, determined, and rejected in the court's order of May 8, 2000.

For these reasons and for the reasons contained in the May 8 order, the debtors have failed to allege adequate grounds for disqualification under applicable law. The court, therefore, denies the motion for rehearing.